NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SLING TV, L.L.C.,**
*Appellant*

**v.**

**UNILOC 2017 LLC,**
*Appellee*

---

2021-1651

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2019-01363.

---

Decided:  February 2, 2022

---

ELIOT DAMON WILLIAMS, Baker Botts LLP, Palo Alto, CA, argued for appellant.  Also represented by GEORGE HOPKINS GUY, III; ALI DHANANI, Houston, TX, KURT M. PANKRATZ, Dallas, TX.

NATHAN K. CUMMINGS, Etheridge Law Group, Southlake, TX, argued for appellee.  Also represented by JAMES ETHERIDGE, BRIAN MATTHEW KOIDE, RYAN S. LOVELESS, BRETT MANGRUM.

---

Before LOURIE, DYK, and REYNA, *Circuit Judges*.

DYK, *Circuit Judge*

Sling TV, L.L.C. ("Sling") appeals an inter partes review decision of the Patent Trial and Appeal Board ("Board") concluding that Sling had not shown claims 1–3 of U.S. Patent No. 9,721,273 ("the '273 patent") to be unpatentable. We *vacate* and *remand*.

## BACKGROUND

The '273 patent relates to providing "audio/visual presentations via a computer network." '273 patent, col. 1, ll. 36–37. The '273 patent describes the use of Really Simple Syndication ("RSS"), a standardized data format "used to publish [Internet] content that may be frequently updated." *Id.* at col. 10, ll. 64–67. An RSS feed has a single "channel." J.A. 722. The channel contains information about the feed itself (such as title, link, and description), as well as any number of "item" elements. J.A. 722, 725. Each item element "may represent a 'story'—much like a story in a newspaper or magazine"—and contains metadata elements with information about the item, such as title, link, description, author, and category, with title or description being mandatory. J.A. 725 ("All elements of an item are optional, however at least one of title or description must be present.").

Claim 1 of the '273 patent recites the following:

A method for providing content via a computer network and computing system, the method comprising:

storing presentation data that represents content of a first collection of one or more presentations using the computer system;

> storing data indicative of the first collection of presentations so as to be associated with the presentation data;
>
> storing feed data that represents a collection of one or more feeds using the computer system, wherein each of the feeds identifies a corresponding second collection of one or more presentations being accessible via the computer network and includes no data representing content of the second collection of presentations;
>
> automatically and periodically accessing each of the feeds to identify each of the corresponding second collection of presentations, using the computer system;
>
> storing data associated with a third collection of one or more presentations; and
>
> aggregating each of the first, identified second, and third collections of presentations for delivery via the computer network using a common web page.

'273 patent, col. 12, ll. 39–59. Claims 2 and 3 are dependent claims that were not separately addressed by the Board. We are concerned here with the limitation "storing feed data that represents a collection of one or more feeds using the computer system, wherein each of the feeds identifies a corresponding second collection of one or more presentations being accessible via the computer network and includes no data representing content of the second collection of presentations" (hereinafter "the feed limitation"). *Id.* at col. 12, ll. 46–51.

Sling petitioned the Board for inter partes review of claims 1–3 of the '273 patent, asserting that the claims were obvious over U.S. Patent Application Publication No. 2008/0256443 ("Li") as well as Li in combination with U.S.

Patent Application Publication No. 2008/071929 ("Motte"). J.A. 56. In its petition, Sling argued that Li discloses the feed limitation via its use of RSS. J.A. 82–89.

In its Final Written Decision, the Board stated that in its institution decision, it had "misread" the petition and "understood [Sling] to be relying on Li's link to an RSS channel as the claimed feed" rather than Sling's actual position, which relies on "Li's link to an RSS channel as the claimed *feed data* and the RSS channel, itself, as the claimed *feed*." J.A. 8. The Board found that Sling's actual position requires a claim construction of "no data representing content" in the feed limitation to encompass metadata, and stated that Sling's "position on claim construction only became clear at the hearing." J.A. 8–9. The Board determined that the "[p]atent [o]wner . . . did not have notice and fair opportunity to present arguments and evidence rebutting [Sling]'s theory [and f]or this reason, [found] that [Sling] ha[d] not demonstrated by a preponderance of the evidence that claims 1–3 of the '273 patent are unpatentable." J.A. 13. Nonetheless, the Board addressed the merits. The Board "credit[ed] [Sling's] statement that the [p]etition relies on Li's RSS channel" but declined to "adopt [Sling's] belated clarification of its claim construction position asserting that metadata do not qualify as data representing content." J.A. 24. The Board determined that because Li's RSS channel includes metadata, it does not disclose the feed limitation, which requires that the feed "includes no data representing content." J.A. 24–25. Because both grounds relied on Li, the Board concluded that Sling had not shown obviousness of the challenged claims. Sling appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Claim construction is a question of law that may involve underlying factual inquiries. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325–26 (2015). We

review claim constructions based solely on intrinsic evidence de novo and factual findings as to extrinsic evidence for substantial evidence. *Jazz Pharms., Inc. v. Amneal Pharms., LLC*, 895 F.3d 1347, 1360 (Fed. Cir. 2018).

To the extent the Board's decision rested on the theory that Sling "did not sufficiently clarify its claim construction position" in its petition, J.A. 13, that is not correct. Sling's petition contained an explicit mapping of the relevant elements in the feed limitation. The petition identifies, multiple times, links to RSS feeds disclosed by Li as the "feed data" and the RSS feeds themselves as the feed:

> Li discloses feed data, such as addresses of RSS feeds. . . . Li describes that the user performs a "registration act" that sends portal server 10 an RSS feed's URL address (i.e., feed data). . . . Thus, Li discloses storing feed data (addresses of RSS feeds) that represents a collection of one or more feeds (the user's subscribed feeds) using the computer system (portal server 10).

J.A. 83–84. The petition also argued:

> The only specific example of a feed disclosed by the '273 Patent is a feed based on an RSS standard. Thus, a POSA would understand that the feature of 'no data representing content' is inherent to an RSS feed, such as that disclosed by Li.

J.A. 86 (citation omitted).

On the merits, the Board's decision is difficult to understand. The Board expressed that "the outcome turns on whether metadata qualifies as 'data representing content.'" J.A. 11. In rejecting Sling's arguments, the Board was "not persuaded that . . . metadata do not qualify as data representing content," J.A. 17–18, and it "decline[d] to adopt [Sling's] asserted construction that metadata do not qualify as 'data representing content,'" J.A. 20. To the extent that the Board suggested that Li's use of RSS does not disclose

the feed limitation because it includes metadata, that cannot be correct. The specification makes clear that RSS with metadata would be within the claim limitation. The specification discusses embodiments in detail "with regard to RSS 2.0 feeds," and it mentions that the invention "may be suitable for use with other types of content (e.g., audio/video) feeds." '273 patent, col. 11, ll. 14–19. The specification describes the use of standard RSS in conventional ways. *Id.* at col. 10, ll. 66–67 ("RSS utilizes a standardized format."), col. 11, ll. 27–28 ("[T]he logged on user requests to link an RSS feed, e.g., by interacting in a conventional manner with web page 200."), col. 11, ll. 64–65 (Determining if new content exists "may be accomplished in any of a number of conventional manner[s]"). The conventional RSS standard requires including metadata, specifically either title or description, for each item in the feed. J.A. 725. At oral argument, Uniloc's counsel could not identify anywhere in the '273 patent specification disclosing an RSS feed without metadata. Oral Arg. 16:30–17:50.

Under the Board's interpretation of "no data representing content," the preferred RSS embodiment would fall outside the scope of claim 1 because standard RSS feeds contain metadata. "A claim construction that 'excludes the preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support.'" *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1378–79 (Fed. Cir. 2013) (quoting *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010)). Because the Board's claim construction excludes a preferred embodiment and is inconsistent with the specification's description of the invention, it is incorrect. [1]

---

[1]    The Board suggested an apparent tension between the construction of "presentation data that represents content" earlier in claim 1 and "no data representing content" in the feed limitation. J.A. 20–22. We think that the

We think that the correct claim construction of the feed limitation encompasses RSS feeds containing metadata, but would exclude, for example, RSS feeds containing "the entirety of a text story," which the Board noted would be within the RSS standard but outside the scope of the limitation, J.A. 17.  On remand, the Board should determine whether the challenged claims in the '273 patent would have been obvious over Li or the combination of Li and Motte in light of the correct construction of the feed limitation.

## CONCLUSION

We vacate and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

### COSTS

Costs to Sling TV, L.L.C.

---

language of the two limitations does not require the same construction, and we further note that Sling's petition relied on Li's disclosure of a "content library," not Li's use of RSS feeds, to satisfy the "presentation data" limitation. J.A. 78 ("Li describes storing the presentation data (thumbnails and titles) in a 'content library' of database 11 and/or a 'cache memory' of portal server 10.").